IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RALPH D. JAMES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-1086 |
| | § | |
| CRATE & BARREL, INC., | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This employment discrimination case is before the Court on the Motion for

Summary Judgment ("Motion") [Doc. # 45] filed by Defendant Euromarket Designs,

Inc., d/b/a Crate & Barrel, Inc. ("Defendant" or "Crate & Barrel").  Plaintiff Ralph D.

James ("Plaintiff" or "James") filed a Response [Doc. # 53], to which Defendant filed

a Reply [Doc. # 60].[1]  Having carefully reviewed the full record and the governing

legal authorities, the Court **grants** Defendant's Motion.

## I.   BACKGROUND

### A.   Factual Background

---

[1]     Both parties filed motions requesting leave of the Court to exceed the page limit for
their respective briefing.  These motions are unopposed, and, having concluded that
the additional pages are warranted, the Court **grants** Defendant's Motion for Leave
to Exceed the Standard Page Limit for Briefs [Doc. # 43] and **grants** Plaintiff's
Unopposed Motion for Leave to Exceed Page Limits [Doc. # 55].  Plaintiff's Agreed
Motion to Enlarge Time [Doc. # 61] is also **granted**.

Additionally, the Court **grants** Plaintiff's Motion to Supplement Response to
Summary Judgment ("Motion to Supplement") [Doc. # 62].  In deciding the instant
summary judgment motion, the Court has considered the contents of this document.

Plaintiff James is a sixty-five year old male who worked for Defendant Crate & Barrel from 2006 to 2013 at the Highland Village store in Houston, Texas (the "Store").[2]  James was initially hired as a customer service representative.[3]  After approximately six months, James applied for and received a transfer to become a Furniture Sales Associate.[4]  As a Furniture Sales Associate, James was responsible for selling furniture to customers, and he earned higher compensation by receiving a commission on all his sales.[5]  He continued working as a Furniture Sales Associate until his employment was terminated in May 2013.[6]

### 1.    James's Allegations of Harassment and Discrimination

James alleges that Crate & Barrel subjected him to adverse and disparate treatment because of his gender and age.[7]  He contends there were few men in managerial positions at the Store and that he "felt alienated" and "treated differently"

---

[2]     Declaration of Mr. Ralph Douglas James ("Plaintiff's Decl.") [Doc. # 54], at ECF pages, 2-7, ¶ 1.

[3]     Deposition of Ralph Douglas James ("Plaintiff's Depo.") [Docs. # 47-3, # 47-4, # 47-5, and # 54], at 35.  The parties submitted as separate documents various portions of Plaintiff's deposition testimony.  For convenience, the Court refers to all documents as "Plaintiff's Depo." and cites to the page number of the deposition transcript.

[4]     *Id.*, at 40.

[5]     *Id.*, at 42, 178.

[6]     *Id.*, at 43.

[7]     First Amended Complaint ("Amended Complaint") [Doc. # 17].

on account of his age and gender.[8]  He also contends that the Store discriminated against him on the basis of his age and gender by denying him promotion to the position of "night manager."[9]  He believes that the Store held him to a higher standard of employment than female employees.[10]

When asked to provide specific examples of discrimination, James points primarily to the harassment he allegedly received from a female Furniture Sales Associate, Lori LaFrance ("LaFrance").[11]  James avers that LaFrance harassed him by accusing James of stealing her sales, making negative remarks about James to other Store employees, reviewing James's sales in the Store's computer system without his consent, paging another male sales associate one time to assist with a sale instead of James, and engaging in "passive-aggressive" behavior, such as refusing to talk to James for extended periods of time and using her body to move him when she believed he was in her way at the register.[12]  He believes that the Store's managers ignored his repeated complaints about LaFrance because he is an older male.[13]  James

---

[8]      Plaintiff's Depo., at 110.

[9]      *Id.*, at 111.

[10]     *Id.*, at 123.

[11]     Plaintiff's Answers to Interrogatories [Doc. # 46], at ECF pages 23-29, at 2-3.

[12]     Plaintiff's Depo., at 71, 72, 73, 78, 79, 81, 84, 94, 125.

[13]     *Id.*, at 136.

concedes LaFrance "had issues with all sales associates at some point in time in sales."[14]   While he orally complained about LaFrance's behavior to the Store's management on multiple occasions, he never filed a formal complaint alleging gender or age discrimination.[15]

### 2.    James's Performance History

Throughout his tenure, James was consistently one of the Store's top furniture salesmen and received generally positive feedback on his annual reviews.[16] Nevertheless, the Store managers, including one male manager, reported over the years complaints about James's attitude and behavior from customers and staff.[17] Indeed, when Crate & Barrel underwent a major management change in 2010, a Furniture Area Manager recommended terminating James because, despite his top

---

[14]    *Id.*, at 90.

[15]    *Id.*, at 95, 104, 116, 118.

[16]    *See, e.g.*, The Performance Appraisal Form/2012 ("2012 Performance Appraisal") [Doc. # 54-2], at ECF pages 8-10; Performance Appraisal Form–Associate from 10/09 to 10/10 [Doc. # 54-2], at ECF pages 19-24; Full-Associate Performance Appraisal dated Jan. 26, 2010 [Doc. # 47-2], at ECF page 35.

[17]    For example, in 2007, James, when asked to sign a Christmas card, made a comment about the Virgin Mary that he claims was intended as a joke but several staff members found to be highly offensive and complained to management about.  Exhibit A to Vol. 1 of Motion [Doc. # 47-1], at ECF pages 7-8.  In March 2008, the Store received a complaint from a customer whose overall impression of Crate & Barrel was damaged because James made the customer feel uncomfortable and a bother to assist. Performance Improvement Agreement [Doc. # 47-1], at ECF page 21.

sales, this manager believed James too difficult to work with.[18]  Ultimately, the new

store manager, Nicole Wollek ("Wollek"), did not pursue James's termination in June

2010.[19]  While working with Wollek between 2010 to 2013, James continued to be a

top seller with generally positive annual reviews, but he also received additional

behavioral complaints from customers and staff.[20]

### 3.    James Given Final Performance Warning

On January 31, 2013, a female, African American coworker, Renata Lee

("Lee"), emailed Wollek complaining that James had made racially discriminatory

remarks to other store employees about the way her hair smelled and how much

makeup she wore.[21]  Wollek and LouAnn Bates ("Bates"), a regional manager, met

with James on February 5, 2013, to discuss Lee's allegations.[22]  James states that he

denied making any comments about Lee.[23]  Wollek and Bates state that James became

---

[18]    Email from Cella to Gottschalk dated June 19, 2010 [Doc. # 47-2], at ECF page 8.

[19]    Exh. O to Vol. II of Motion (Emails) [Doc. # 47-2], at ECF pages 10-11.

[20]    *See* 2012 Performance Appraisal; Email to Wollek dated Feb. 21, 2012 [Doc. # 47-6], at ECF page 17 (sending Wollek a customer complaining that James was rude to his family); Conversation Record dated June 5, 2012 [Doc. # 47-6], at ECF page 19 (recording an incident of James being accused of sharing personal information about a co-worker in a malicious manner).

[21]    Email from Lee to Wollek [Doc. # 47-2], at ECF page 18.

[22]    Affidavit of Nicole Wollek ("Wollek Aff.") [Doc. # 47-2], at ¶ 6.

[23]    Plaintiff's Decl., at 5.

evasive and defensive at the meeting.[24]  At their request, James provided a written

statement afterwards.[25]  At the end of the meeting, James asked to speak with Bates

alone; Wollek agreed and left the room.[26]  James, at his deposition, described his

conversation with Bates as follows:

> It was a far-ranging conversation, lasted for one and a half hours
> approximately.  We discussed all aspects of the store, all aspects of the
> changes [referring to management changes in 2010], all aspects of my
> dissatisfaction with the way I had been treated as a man due to my sex,
> to the continuing harassment of Lori La France, to management
> techniques, management ability, the changers that were occurring, the
> way those were communicated.
>
> *    *    *    *
>
> I think I expressed to Ms. Bates that because of all the changes and
> because the–there was minimal communication about how these changes
> would impact us, us meaning furniture associates, whether or not we
> would receive commission, whether our commission structure was being
> changed, how we were supposed to utilize various processes that were
> being introduced to us, various plans to have us take online courses, and
> as a consequence of this minimal communication—let's put it this
> way—there was very low morale in the store.  No one really knew who
> was on first.[27]

When asked what specific complaints he made to Bates about the treatment he

received as a male and older employee, James testified that "[a]t this time I can't recall

---

[24]    Wollek Aff., ¶¶ 6-7; Affidavit of Louann Bates ("Bates Aff.") [Doc. # 47], at ECF
        pages 31-34, ¶¶ 6, 9.

[25]    *See id.*

[26]    Bates Aff., ¶ 7.

[27]    Plaintiff's Depo., at 182-83.

specifically what I said to her.  Other than a generalized I felt [sic] I was being treated differently at this time."[28]  Bates's notes from the meeting list numerous complaints and criticisms James made about the Store and past and current management, such as "Merch team struggling," "Jay [James] doesn't feel he will ever sell 1.8m again.  Reasons: zones, too loud on the first floor for conversation, no color printer, not enough pos on 2nd floor.  All busy on weekends," and "Nic [Wollek] wore jeans 2 weeks before Xmas."[29]  Bates' notes state "[t]here's a click" but do not contain any specific references about James stating that he felt he was treated differently because of his gender or age.[30]

Wollek further investigated Lee's allegations about James's comments by interviewing two other Furniture Sales Associates at the Store, one female and one male.[31]  These coworkers confirmed that they heard James make comments about Lee's smell and the amount of make-up she wore.[32]  Based on this investigation and

---

[28]     *Id.*, at 184.

[29]     Louann Bates's Notes From Feb. 5, 2013 Meeting [Doc. # 47], at ECF pages 36-37.

[30]     *Id.*

[31]     Wollek Aff., ¶ 5.

[32]     Email from Courtney Fowler Cotton to Wollek dated Feb. 4, 2013 [Doc. # 47-2], at ECF page 22 ("[James] said he was going to talk to [Lee] about how much make up she wears.  I asked him not to do that, then he started making comments about her smell."); Email from Ryan Lawson to Wollek dated Feb. 13, 2013 [Doc. # 47-2], at ECF page 24 ("[T]he situation in reference was not the first time I heard [James]
(continued...)

a review of James's disciplinary file, Wollek and Bates determined James had made the comments about Lee and that his conduct warranted being placed on "Final Performance Warning."[33]

On February 8, 2013, the Store issued James a Final Performance Warning, informing him that his conduct was in violation of Crate & Barrel's harassment policies and advising him that "[f]ailure to comply with the above performance standards or any Standard of Conduct outlined in the Associate Guide, will be cause for termination."[34]  Although James emailed Wollek shortly after receiving the Final Performance Warning that he would be preparing a response, he does not recall actually sending one.[35]

---

[32]     (...continued)
mention something about [Lee].  Most times it was in reference to her makeup, and how he didn't like to have it on the phones. . . .  And as I mentioned, in general, [James] at times can be a very negative force on the sales floor, even on days where he doesn't seem to have much to be upset about.  There are days where he is pleasant though, I don't want to paint a completely negative picture of him or anything.").  Lawson now denies having said that James made any "rude comments" about Lee.  Declaration of Ryan Lawson ("Lawson Decl.") [Doc. # 54-2], ¶ 5.  To the extent there is a fact dispute about Lawson's comments to Wollek during her investigation of Lee's complaints about James, the dispute is not material.

[33]     Wollek Aff., ¶ 7; Bates Aff., ¶ 9.

[34]     Final Performance Warning ("FPW") [Doc. # 47-6], at ECF page 40.

[35]     Plaintiff's Depo., at 198-99.

### 4.      Crate & Barrel Terminates James

Three months later, on May 12, 2013, the Store received a customer complaint through the Store's online complaint system stating that the customer "no longer felt welcome" at Crate & Barrel because James rudely greeted his family at the Store.[36] When asked about the incident, James conceded that he had greeted the customer and his family, but insisted that any comments he made were taken out of context and not meant to be offensive.[37]  Wollek interviewed a male coworker, who confirmed that James had interacted with the customer who filed the complaint, although the coworker also felt that any comments by James had not meant to be offensive to the customer.[38]   Wollek notified Bates and Human Resources about the customer complaint, and they determined that, regardless of James's intent in making any comments to the customer, the customer was clearly offended.  James's behavior, therefore, was deemed inappropriate and unprofessional and to have violated the terms of his Final Performance Warning.[39]   On or about May 20, 2013, James was

---

[36]      TalkBin Customer Complaint [Doc. # 47-2], at ECF page 26.

[37]      Plaintiff's Depo., at 169-70.

[38]      Wollek Depo., at 107; Lawson Decl., ¶ 2.

[39]      Wollek Aff., at ¶ 10.

terminated from Crate & Barrel.[40]

After James was terminated, a former store manager offered him a sales associate position with a furniture company in California, which James declined because he did not want to relocate.[41]  He currently works for Trader Joe's making less money than he did as a Crate & Barrel Furniture Sales Associate.[42]

## B.    **Procedural History**

On April 21, 2014, James filed this lawsuit against Crate Barrel alleging age and sex discrimination.[43]  In the operative pleading in this case, James brings three claims against Crate & Barrel: (1) "Age Discrimination" under the Age

---

[40]    *Id.*

[41]    Plaintiff's Depo., at 208-09.

[42]    *See id.*, at 203.

[43]    James alleges that he received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"), *see* Amended Complaint, ¶ 8, and Crate & Barrel does not dispute this assertion.  Shortly after he was terminated from Crate & Barrel, James apparently filed charge(s) of discrimination with the Texas Workforce Commission Civil Rights Division and/or EEOC, and was awarded unemployment benefits by the Texas Workforce Commission ("TWC").  *See* Charge of Discrimination [Doc. # 54-2], at ECF pages 5-6; Texas Workforce Commission Decision ("TWC Decision") [Doc. # 54-2], at ECF page 7.  James suggests that the TWC Decision awarding him benefits is evidence of Crate & Barrel's alleged discriminatory treatment of him.  However, "[a] finding of fact, conclusion of law, judgment, or final order" of the TWC may not be used as evidence in a lawsuit (except in suits to enforce payment of unemployment benefits). TEX. LAB. CODE § 213.007.  Thus, the Court does not consider this administrative ruling proper summary judgment evidence.  *See Williams v. Aviall Servs., Inc.*, 76 F. App'x 534, 536 (5th Cir. 2003) ("Under Texas law, the Texas Workforce Commission's findings and conclusions may not be used as evidence in lawsuits.").

Discrimination in Employment Act ("ADEA"), (2) "Sex Discrimination and Hostile

Work Environment" under Title VII of the Civil Rights Act of 1964, as amended

("Title VII"); and (3) "Retaliation Claim" under Title VII.[44]  James seeks (1) actual

damages in the form of "back pay and front pay, loss wages, commissions and

employee benefits"; (2) punitive damages; (3) court costs and attorneys' fees; (4) pre-

judgment and post-judgment interest; and mental anguish damages.[45]  The parties

conducted discovery.

On April 20, 2015, Crate & Barrel filed the instant motion seeking judgment

as a matter of law on all of James's claims.  That motion has been fully briefed and

is ripe for review.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

judgment who fails to make a sufficient showing of the existence of an element

essential to the party's case, and on which that party will bear the burden at trial.

---

[44]    Amended Complaint, ¶¶ 22-36.  James also initially alleged that Crate & Barrel
denied him commissions.  *Id.*, ¶ 21, 26; *see also id.*, ¶ 36; Motion to Supplement, ¶
21.  James, however, withdrew those allegations.  *See* Plaintiff's Response to
Defendant's First Set of Request for Production [Doc. # 47], at ECF page 19 (Plaintiff
responding that "[c]ommissions owed were eventually paid in full.  As such, no
commissions are owed to date."); Plaintiff's Depo., at 134 (Plaintiff stating, "I have
withdrawn that complaint" in response to Defendant's question regarding allegations
that Plaintiff was not given commissions).  The commissions are no longer actionable.

[45]    Amended Complaint, ¶ 37.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation

and internal quotation marks omitted).  In the absence of any proof, the court will not

assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d

at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence.  *See*

*Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves*

*Brokerage Co.*, 336 F.3d at 412-13).   The Court is not required to accept the

nonmovant's conclusory allegations, speculation, and unsubstantiated assertions

which are either entirely unsupported, or supported by a mere scintilla of evidence.

*Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).

Affidavits cannot preclude summary judgment unless they contain competent

and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or

declaration used to support or oppose a motion must be made on personal knowledge,

set out facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated"); *Love v. Nat'l Med. Enters.*,

230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d

733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported statement in an

affidavit will not defeat summary judgment where the evidence in the record is to the

contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, although the Court may consider all materials in the record when

deciding a summary judgment motion, "the court need consider only the cited materials." FED. R. CIV. P. 56(c)(3). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotation marks omitted).

## III.   ANALYSIS

### A.   Age and Sex Discrimination Claims

Plaintiff's first two causes of action, age discrimination under the ADEA and sex discrimination under Title VII, each require either direct or circumstantial evidence of discrimination. *See Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (ADEA); *Nasti v. Ciba Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (Title VII).   Plaintiff contends he has provided both types of evidence.   The Court disagrees.   For the reasons explained below,   Defendant is awarded summary judgment on Plaintiff's discrimination claims.

#### 1.   Direct Evidence of Discrimination

In the Fifth Circuit, proving discrimination through direct evidence is rare and may include any statement or written document "showing a discriminatory motive on

its face." *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328-29 (5th Cir. 1994). "Direct evidence proves intentional discrimination without inference or presumption when believed by the trier of fact." *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 272 (5th Cir. 2006) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).

Plaintiff contends that "there is [sic] several instances of direct evidence of discrimination by James's Supervisor, Nicole Wollek and Susan Shirley." Response, at 40. James, however, does not point to any instances involving Wollek in support this assertion. Indeed, James specifically testifies that Wollek and Bates never made any explicit comments about his gender or age. Plaintiff's Decl., ¶ 8.

James argues that "Shirley made ageist comments and gave scheduling preferences as mentioned to females." Response, at 41. He does not cite the Court, however, to any evidence in the record in support of these assertions. In another section of his brief, James highlights an allegedly "ageist comment" that appears in an email an assistant manager sent *to* Shirley on July 27, 2010.[46] To the extent James

---

[46]   *See* Response, at 35 (citing "Ex. 3"). Plaintiff appears to cite "Ex. 3" in error. Exhibit 3 to Plaintiff's Response contains statistics about the number of male and female employees at Crate & Barrel, a copy of Plaintiff's "Charge of Discrimination," and copies of some of his performance evaluations. *See* Doc. # 54-2, at ECF pages 1-52. The email exchange quoted in this section of his brief actually appears in Exhibit 13 to Plaintiff's Response. *See* Email from Jessica DeFeo to Shirley dated July 27, 2010 ("July 27, 2010 Email") [Doc. # 54-5], at ECF pages 7-9.

argues this email is direct evidence of discrimination, the argument fails because nothing in the document shows without inference or presumption discriminatory intent of Defendant, even when viewed in the light most favorable to James.

James also fails to clarify his allegations regarding Shirley's "scheduling preferences." Response, at 40. James complained to the store's Housewares Assistant Manager, Jessica DeFeo ("DeFeo"), on one occasion about being scheduled to work six days in a row. To the extent James relies on this incident as direct evidence of discrimination, nothing in the record suggests James's age or gender played any role in the decision.[47]

---

[47]   The July 27, 2010 Email contains DeFoe's description about a meeting she had with James regarding his scheduling concerns:

> We went further into how he physically cannot work six days straight since "he's not 25 anymore," and I told him that had never been communicated to me, or to Susan [Shirley], so I was unaware.

July 27, 2010 Email. It is undisputed that *James* raised the concerns about his age and that, after he raised these concerns, the Store responded by reinstating his previous schedule. He does not recall similar scheduling problems occurring again. *See* Plaintiff's Depo., at 143-44; Response, at 35. James also argues in passing that a female coworker, Lee, was allowed to take time off for football games on Sundays while he had to "go through hoops" to request vacation time. Response, at 19. To the extent James relies on this as direct evidence of discrimination, there is nothing in the record to suggest discriminatory animus regarding decisions about awarding store employees vacation time. James admits that he was not present when Lee requested time off and does not know anything about the process she went through for that time off. Plaintiff's Depo., at 141-42. Nor does he establish that the time she was out was not charged as vacation time. He provides no factual support for his allegations that he had to "go through hoops" to request vacation time because he was a male employee.

Finally, James asserts in conclusory fashion that "[t]he record here is fraught with evidence of Age and Sex Discrimination [sic]."  Response, at 32.  None of his arguments, however, relate to evidence that if proved would show discrimination on its face.  In sum, James has failed to raise a genuine dispute of material fact of age or sex discrimination in this case through direct evidence.

### 2.     Circumstantial Evidence of Discrimination

#### a.     Applicable Legal Principles

James also contends he has provided circumstantial evidence of discrimination. When relying on circumstantial evidence of discrimination, a plaintiff must proceed under the burden shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under the *McDonnell Douglas* framework, James first must satisfy the elements of a *prima facie* case.  For an age discrimination claim, those elements are: "(1) the plaintiff was discharged; (2) he was qualified for the position at issue; (3) he was within the protected class; and (4) he was replaced by someone younger or outside the protected group."  *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013).  Similarly, to establish a *prima facie* case of sex discrimination, James must show: (1) he belongs to a protected group; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was replaced by a similarly qualified person who was not a member of his protected

group or, in the case of disparate treatment, that similarly situated employees were treated more favorably.  *Nasti*, 492 F.3d at 593.

If James establishes a *prima facie* case of age or sex discrimination, the burden of production, not persuasion, shifts to the employer to produce a "legitimate, non-discriminatory reason for its actions."  *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *accord Squyres v. Helco Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015).

"If the employer meets its burden, then the burden shifts back to the plaintiff to make an ultimate showing of intentional discrimination."  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012).  For this third and final step of the *McDonnell Douglas* analysis, the burdens differ between the ADEA and Title VII.  *Id.*; *accord Squyres*, 782 F.3d at 231.  "Under the ADEA, the employee must'"prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  *Squyres*, 782 F.3d at 231 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000)).  Under Title VII, "[i]f the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and

another 'motivating factor' is the plaintiff's protected characteristic." *Alvarado*, 492 F.3d at 611; *Roberts v. Lubrizol Corp.*, 582 F. App'x 455, 458 (5th Cir. 2014).

### a.    Plaintiff's *Prima Facie* Case

For a *prima facie* showing, James must present evidence on each his age and sex discrimination claims that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment decision; and (4) he was replaced by someone outside the protected group, or, for a disparate treatment claim, that similarly qualified people outside the protected group were treated more favorably. *Leal*, 731 F.3d at 410-11; *Nasti*, 492 F.3d at 593.

James contends he has shown a *prima facie* case of age discrimination because "(1) James is a sixty-four year old man (64) year [sic] old[;] (2) James was terminated from the position[;] (3) because of hiss [sic] age[;] and (4) he was replaced by a person under 40 years old, outside the protected class." Response, at 30. James further asserts that he has demonstrated a *prima facie* case because:

> James belongs to a protected class he is 64 years old. It is undisputed that James was qualified for the position in question,. Likewise it is undisputed James was subject to discharge or other adverse employment action . Finally, his employer treated other similarly situated employees, outside his protected class more favorably. James's replacement a female under the age of 40, James replacement is not subjected to the demands of working for six days a week. Doubtful, is her attitude scrutinized.

Response, at 43 (all spelling and grammatical errors in original).

It is undisputed that James has met his burden on the first three elements of his *prima facie* case.  First, as a sixty-five year old male, James qualifies as a member of a protected class under the ADEA and Title VII.  *See* 29 U.S.C. § 631(a); *Leal*, 731 F.3d at 411 (ADEA); *Avina v. JP Morgan Chase Bank, N.A.*, 413 F. App'x 764, 768 (5th Cir. 2011) (Title VII).  Second, James, a successful Furniture Sales Associate for nearly seven years, was qualified for the position.  Reply, at 16 (noting that "Defendant did not terminated Plaintiff based on his lack of qualifications").  Third, James suffered an adverse employment action, in that he was terminated from his Furniture Sales Associate position with Crate & Barrel.[48]

---

[48]    James vaguely asserts he "was subject to discharge or other adverse employment action." Response, at 43.  To the extent James bases his discrimination claims on an adverse employment action other than his termination, James's arguments are unavailing.  While some of James's arguments relate to his Final Performance Warning, *e.g.*, Response, at 33-34, he has not shown that receiving a Final Performance Warning satisfies the Fifth Circuit's requirement for an actionable adverse employment action in discrimination claims to be an "ultimate employment decision."  *See Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014) ("[A]dverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating."); *Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009) (applying this same standard to sex, race, and age discrimination claims).  Additionally, James argues he has made a *prima facie* showing of discrimination based on his "denial of promotion to Night Manager." Response, at 6.  While a denial of a promotion may be considered an ultimate employment decision, there is no evidence in the record that James was actually denied a promotion.  James testifies that Defendant offered him a night manager position early in his career with Crate & Barrel, but he declined because he felt it would mean a decrease in compensation.  Plaintiff's Depo., at 129-30.  Several years later, James asked to be reconsidered for a "night manger" position, after discovering that it might lead to more compensation.  *Id.*, at 130.  James states, however, that when he made this request there were no vacant night manager positions.  *Id.*, at 132.
(continued...)

For the last element of his *prima facie* case, James asserts that he was replaced by someone outside the protected class.  Without citing to any evidence in the record, James asserts that "Ellis Hubbard, manager, however, specifically recalls a female under the age of forty years old from Crate & Barrel's Chicago office requesting a transfer back to her hometown of Houston, Texas[,] replacing James."  Response, at 33.  Wollek states that after James was fired in May 2013 she hired two new Furniture Sales Associates in June 2013, a female under the age of forty and a male under the age of forty who transferred from another position.  Wollek Aff., ¶ 12.[49]  It is unclear which of these new hires, if any, replaced James.  However, viewing the evidence in the light most favorable to James, it is arguable that James was replaced by a younger, female employee.  For purposes of this summary judgment motion only, the Court

---

[48]      (...continued)
Thus, at the time of his request, he was asking the store to create a new position for him, which the store's manager stated she was unable to do.  *Id.*, at 132-33.  James contends that night manager positions were not formally posted.  Response, at 15 (citing Plaintiff's Depo., at 230).  Even if the Court assumes this to be true, for a *prima facie* case of discrimination based on a denial of promotion for a position that is not formally posted, the Fifth Circuit requires some evidence that the employer promoted, hired, or continued to seek someone outside the protected class for this position after denying the employee's request.  *See Jones v. Flagship Int'l*, 793 F.2d 714, 724 (5th Cir. 1986).  James admits no one else was hired for this night manager position and presents no other evidence in support of his claim.  Plaintiff's Depo., at 133.  James, therefore, fails to state a *prima facie* case of discrimination based on his unsubstantiated allegations that he was denied a promotion to "night manager."  James's discrimination claims are limited to his termination.

[49]      Crate & Barrel also asserts in its brief that Wollek hired a 60 year old male as a Furniture Sales Associate several months after James was terminated.  Motion, at 25.

finds that Plaintiff has established a *prima facie* case of age and sex discrimination.[50]

### b.  Defendant's Legitimate, Non-Discriminatory Reason

Crate & Barrel has satisfied its burden to produce a legitimate, non-discriminatory reason for terminating James, *see Alvarado*, 492 F.3d at 611; *Squyres*, 782 F.3d at 231, by providing evidence that James was terminated because he received a customer complaint in violation of the terms of his Final Performance Warning, *see* FPW; Wollek Aff., ¶ 10.

### c.  Pretext

James bears "the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against [him] because of [his] protected status." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  Under Title VII, "[t]o carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Id.*  "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Id.*  The ADEA applies a more stringent causation standard, requiring James to prove his age was the "but for" cause

---

[50]  To the extent James intends to argue that he has established a *prima facie* case because similarly situated employees outside the protected class were treated preferentially, these arguments lack merit for the reasons explained below. *See infra* Section III.A.2(c)

of the challenged adverse employment action. *Reed*, 701 F.3d at 439. The distinction between the causation standards is not dispositive of the pending motion. Because the Court concludes that James has failed to raise a genuine and material fact dispute under the more lenient standard of Title VII, James's discrimination claims also fail to meet the more stringent standard of the ADEA.

James first argues that he has provided evidence of disparate treatment. "In disparate treatment cases, the plaintiff-employee must show 'nearly identical' circumstances for employees to be considered similarly situated." *Berquist v. Wa. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007). James's disparate treatment arguments rely solely on two incidents involving LaFrance, a female Furniture Sales Associate.[51] James contends LaFrance was allowed to "clock in" to work early while he was disciplined one time for this same behavior. Response, at 33. Defendant establishes, however, that LaFrance was allowed to "clock in" early after there was a management change at the store, and all employees were regularly allowed to "clock in" early under the new leadership. Wollek Depo., at 94. The circumstances surrounding the

---

[51]   James describes two conversations with male coworkers as "me too" evidence of discrimination. Response, at 20. To the extent James intends to rely on these two conversations to support his disparate treatment arguments, "[a]necdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff." *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000). James has not provided any specifics about his male employees. His vague references to general conversations fall far short of meeting his summary judgment burden to raise a genuine and material fact dispute on an essential element of his discrimination claims.

two incidents have been shown to be not nearly identical.

James also points out that LaFrance was placed on Final Performance Warning for two years without being terminated, while he was terminated three months after being placed on Final Performance Warning. Response, at 33-34. James received a customer complaint three months after receiving a Final Performance Warning. In comparison, Wollek testified that she "believe[s] that [LaFrance] had a complaint" "[o]ver the course of [LaFrance's] careeer," but Wollek did not know if any complaints were after LaFrance was placed on Final Performance Warning, and she could not recall the specifics of any of those complaints. Wollek Depo., at 112-13. James points to no evidence that supplies any details. Wollek's vague statement is the only evidence James presents of any complaints that LaFrance potentially received and that evidence is insufficient to meet his summary judgment burden to show that the circumstances surrounding his termination were nearly identical to LaFrance's circumstances. Accordingly, James fails to raise a genuine and material fact dispute on his disparate treatment arguments.

James further argues that Crate & Barrel's proffered reason for his termination is unworthy of credence because James did not intend to make any rude remarks to the customer who complained about his behavior in May 2013. This argument misses the mark. It is well established in the Fifth Circuit that "[t]he question is not whether an

employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1068, 1091 (5th Cir. 1995). "Because Title VII is aimed at redressing intentional discrimination and is not aimed at redressing errors of perception and managerial judgment, this court will not second guess [an employer's] business decision." *Flournoy v. Campbell Concrete & Materials, LLC*, Civ. Action No. H-09-3894, 2011 WL 722614, at *7, (S.D. Tex. Feb. 22, 2011) (Lake, J.) (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)).[52]

In fact, James's primary evidence of a discriminatory motive for his termination is his subjective belief that he was treated differently because he is an older male. This is insufficient summary judgment evidence to raise a genuine and material fact dispute on his discrimination claims. *See Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1164 (5th Cir. 1993) ("We have held that a plaintiff's subjective belief that

---

[52]    Similarly, James may intend to rely on a 2012 written warning given in response to a customer complaint as evidence of discrimination. *See* Response, at 18-19 (citing Plaintiff's Depo., at 152). James's contentions relate to whether Defendant's decision to give him a written warning was appropriate; the warning does not provide evidence of discriminatory animus. Moreover, James's reliance on this 2012 incident is misplaced in that it does not constitute an "adverse employment decision," *see supra* note 48, and he does not establish that the decision was false or unworthy of credence. He also does not meaningfully explain how this 2012 incident relates to his arguments that Crate & Barrel discriminated against him on the basis of his gender or age by terminating him in 2013.

his discharge was based on age is simply insufficient to establish an ADEA claim.").[53]

James's remaining arguments about Crate & Barrel's disciplinary policies and the number of male managers at Crate & Barrel are completely controverted by the record. James argues extensively that Crate & Barrel violated the Associate Guide's disciplinary policies by not imposing a "suspension" before termination. Response, at 5, 22, 36. The Associate Guide unambiguously states that managers have discretion regarding how to discipline employees:

> A manager has the responsibility to take disciplinary action if an associate's performance is unsatisfactory, or if there is a violation of the Company's Standards of Conduct. The type of action to be taken will be suited to the nature or degree of the violation and may include one or more of the following, in any order: verbal warning, written warning, final performance warning, suspension and/or termination.

Exh. 7 to Response ("2013 Associate Guide") [Doc. # 54-3], at ECF page 29. Crate & Barrel's corporate representative further confirmed in her deposition that it was not the company's policy or practice to always suspend employees before termination.

---

[53]   To the extent James also relies on the affidavit of his coworker Lawson as evidence of discrimination, Lawson's statements that he was "surprised Jay [James] was fired based on something that never happened" and that he believed the decision was "unfair," *see* Lawson Decl., ¶ 2, relate to whether Crate & Barrel made an erroneous decision, which is not the issue before the Court. *See Mayberry*, 55 F.3d at 1091. Additionally, James's unsubstantiated assertions that he "felt that when we were assigned duties that were non-sales related, [and] that women were given a pass if they didn't complete them," are insufficient to raise a genuine and material fact dispute. Response, at 16 (quoting Plaintiff's Depo., at 111). James offers no evidence to support his subjective belief that women were treated differently with regard to "non-sales related" tasks.

Deposition of Kimberley Swinkle [Doc. # 60-1], at 123-24.  James's argument that he was entitled to a suspension before termination lacks support in the record.

James also states that "[o]nly after [he] filed his charge of discrimination in 2013, was there any significant increases [sic] in the number of male managers." Response, at 37.  Defendant's EEO-1 Reports show that there was an increase in the number of male managers at the store prior to any of James's complaints in 2013.  The number of male managers increased from zero in 2011 to four of eight in 2012.  Exh. 3 to Response [Doc. # 54-2], at ECF pages 2-4.  James's contention that "the numbers speak for themselves," Response, at 37, fails to address this discrepancy in his calculations.  In any event, James does not meaningfully explain how the statistics in the EEO-1 reports support his discrimination claim.  *See Humes-Pollett v. Family Health Ctr. Inc.*, 339 F. App'x 490, 494 (5th Cir. 2009) ("[Plaintiff's] statistical evidence, by itself and devoid of any context, is not sufficient to raise a fact issue as to pretext." (citing *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 583 (5th Cir. 2006); *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1185 (5th Cir. 1996)).[54]

Accordingly, James has failed to raise a genuine and material fact dispute on his ultimate burden of establishing that Crate & Barrel intentionally discriminated

---

[54]  Similarly, James's argument that he "observed men rise to a point in the company and then terminated" lacks factual support.  Response, at 20.  He does not cite any evidence other than his personal belief.  It is undisputed that James had at least one male store manager.

against him because of his protected status.  Crate & Barrel is granted summary

judgment on James's age and sex discrimination claims.

### B.    Title VII Hostile Work Environment

Plaintiff's Title VII sex discrimination claim against Defendant includes

allegations that Defendant violated Title VII by creating a hostile work environment.

Amended Complaint, ¶¶ 25-29.  "In order to establish a hostile working environment

claim, a plaintiff must prove five elements: (1) the employee belonged to a protected

class; (2) the employee was subject[ed] to unwelcome sexual harassment; (3) the

harassment was based on sex; (4) the harassment affected a 'term, condition, or

privilege' of employment; and (5) the employer knew or should have known of the

harassment and failed to take prompt remedial action."  *Woods v. Delta Beverage

Grp., Inc.*, 274 F. 3d 295, 298 (5th Cir. 2001).[55]  In order to be actionable under Title

VII, "a sexually objectionable environment must be both objectively and subjectively

offensive, one that a reasonable person would find hostile or abusive, and one that the

victim in fact did perceive to be so."  *Faragher v. City of Boca Raton*, 524 U.S. 775,

787 (1998).  Courts must look at the totality of the circumstances in assessing whether

---

[55]    Plaintiff argues in passing that his hostile work environment claim is grounded in
gender-based and age-based harassment.  However, Plaintiff only sued Defendant for
"hostile work environment" for gender-based harassment under Title VII, not age-
based harassment under the ADEA.  Further, all of Plaintiff's arguments about a
hostile work environment relate to harassment by a female employee, and do not
involve Plaintiff's age.

a work environment is sufficiently hostile, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 787-88 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

James bases his hostile work environment claim on the alleged harassment of his female coworker, LaFrance. Specifically, James states:

> The fact that [LaFrance] continually sought to discredit me as a sales associate, the fact that she continued to go into our POS system and peruse sales that were not hers and questioned those sales, the fact that she would engage in passive aggressive behavior towards me on the sales floor, the fact that she would undermine me to fellow associates and to management, or so I believe.

Plaintiff's Depo., at 70. James does not meaningfully explain how these allegations rise to the level of actionable harassment or amount to more than discord between coworkers. *See Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003).

As importantly, there is no evidence in the record that LaFrance's alleged harassment was in any way motivated by James's gender or age. James states that he believes younger female managers failed to respond adequately to LaFrance's behavior because James was an older man; he explains that he believes LaFrance singled him out "because [he] was the top seller on the floor." Plaintiff's Depo., at 96.

He also contends that LaFrance did not get along with anyone in sales, which apparently included many female employees.  Finally, James has not identified any conditions of employment that were altered by LaFrance's alleged harassment.[56]

James, therefore, has failed to raise a genuine and material fact dispute on several essential elements of his hostile work environment claim.  Crate & Barrel is entitled to summary judgment on this claim.

### C.      <u>Retaliation Claim</u>

James asserts a retaliation claim against Crate & Barrel under Title VII.  Title VII forbids an employer's retaliation against an employee who brings a charge of discrimination.  42 U.S.C. § 2000e-3.  Similar to discrimination claims, retaliation claims are decided under the *McDonnell Douglas* burden-shifting framework.  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).  James first must establish the elements of a *prima facie* case of unlawful retaliation: (1) he participated in an activity protected by Title VII; (2) Crate & Barrel took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action.  *Id.* (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).  Protected activity is defined by the Fifth Circuit as (1) opposing any

---

[56]      "Harassment affects a 'term, condition, or privilege of employment' if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

unlawful employment practice under Title VII; or (2) filing a charge of discrimination or otherwise participating in any manner in a Title VII matter. *See Baker v. American Airlines, Inc.*, 430 F.3d 750, 755 (5th Cir. 2005).  To satisfy the "opposition" requirement, James "need only show that []he had a 'reasonable belief that the employer was engaged in unlawful employment practices.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (quoting *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000)).  Once James satisfies his *prima facie* case, the burden shifts to Crate & Barrel to provide a legitimate, non-discriminatory reason for the adverse employment actions. *Aryain*, 534 F.3d at 484. James has the ultimate burden to show that he would not have received the adverse employment actions "but for" his engagement in protected activity. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 & n.15 (5th Cir. 2005).

First, James has not satisfied the first element of his *prima facie* case, namely, that he engaged in protected activity.  There is no evidence in the record that James filed a charge of discrimination or otherwise participated in a Title VII matter prior to his termination.  James contends Crate & Barrel retaliated against him for raising concerns about the store in his February 5, 2013 discussion with Bates.  Response, at 22.  James does not offer any explanation as to how his conduct at this meeting with Bates qualifies as "opposing" an unlawful employment practice under Title VII.

Although he contends he generally complained about being treated differently as an older man, he cannot provide any specific comments or point to any particular practices or policies.  Plaintiff's Depo., at 184.  Without some meaningful evidence showing that James's conduct at the meeting consisted of opposition to an allegedly unlawful employment practice, James has failed to raise a genuine and material fact dispute as to whether he engaged in protected activity.[57]

Further, even if the Court were to conclude that James engaged in protected activity by speaking with Bates on February 5, 2013, Crate & Barrel would still be entitled to summary judgment because James has not shown that he would not have suffered any adverse employment actions "but for" his comments at the meeting. James contends that Crate & Barrel retaliated against him for his conversation with Bates by placing him on Final Performance Warning and terminating him.  The Court notes first that James has not established how placement on Final Performance Warning qualifies as an adverse employment action for his Title VII retaliation claim. See *Jackson v. Honeywell Int'l Inc.*, 601 F. App'x 280, 286 (5th Cir. 2015) ("[W]ritten

---

[57]   To the extent James intends to argue his complaints about LaFrance to other store managers prior to his meeting with Bates constituted protected activity, *see* Response, at 21,  James does not provide any specifics about these complaints or otherwise establish how they constitute opposition to an unlawful employment practice.  As explained above, James's allegations about LaFrance's harassment, even when viewed in the light most favorable to him, do not in and of themselves rise to the level of an actionable Title VII hostile work environment claim.

warnings and unfavorable performance reviews are not adverse employment actions where colorable grounds exist for disciplinary action or where the employee continues to engage in protected activity." (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also supra* note 48.

More importantly, James has not presented evidence to rebut Crate & Barrel's legitimate non-discriminatory reason for placing him on Final Performance Warning and terminating his employment due to his disciplinary history and in response to specific complaints from a coworker and customer.  *See* FWP; Wollek Aff., ¶ 10. James merely relies on his subjective belief that he was treated differently as an older male and on his theory that Crate & Barrel made wrong decisions by placing him on Final Performance Warning and terminating him.  As discussed above with regard to James's discrimination claims, when considering a plaintiff's evidence of pretext, the Court "is not to engage in second-guessing of an employer's business decisions." *LeMaire v. La. Dep't of Transp. and Dev't*, 480 F.3d 383, 391 (5th Cir. 2007). James's subjective belief that retaliation motivated Crate & Barrel's actions is insufficient to create a fact issue here. *Malouse v. Winter*, 338 F. App'x 356, 359 (5th Cir. 2009) ("Plaintiff's subjective belief of discriminatory intent or retaliatory motive is insufficient." (citing *Septimus*, 399 F.3d at 611; *Byers*, 209 F.3d at 427).

James, accordingly, has failed to raise genuine and material fact disputes on

several essential elements of his Title VII retaliation claim.  The Court grants Crate & Barrel judgment as a matter of law on this claim.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that Defendant is entitled to summary judgment on all of Plaintiff's claims.  Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 45] is **GRANTED**.  Plaintiff's claims are **DISMISSED with prejudice**.  It is further

**ORDERED** that Defendant's Motion for Leave to Exceed the Standard Page Limit for Briefs [Doc. # 43], Plaintiff's Unopposed Motion for Leave to Exceed Page Limits [Doc. # 55], Plaintiff's Agreed Motion to Enlarge Time [Doc. # 61], and Plaintiff's Motion to Supplement Response to Summary Judgment [Doc. # 62] are **GRANTED**.

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this  **30**[th] day of **June, 2015**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE